# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**In re J.B., 2013 IL App (3d) 120137**

---

| | |
|---|---|
| Appellate Court Caption | *In re* J.B., S.B., and R.B., Minors (The People of the State of Illinois, Petitioner-Appellee, v. Lorenzo B., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-12-0137 |
| Rule 23 Order filed<br>Motion to publish<br>allowed<br>Opinion filed | December 18, 2012<br><br>February 28, 2013<br>February 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's findings that three minors were neglected due to an injurious environment were upheld based on the evidence that respondent engaged in sexual intercourse with one and attempted to sexually assault another, notwithstanding his contention that he was intoxicated during the incidents, since that admission supported the findings, and the fact that the officers who investigated the matter did not have recordings of respondent's statements did not render their testimony incredible. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, Nos. 11-JA-118, 11-JA-119, 11-JA-120; the Hon. Mark E. Gilles, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal
Timothy D. McCarthy, of Peoria, for appellant.

Jerry Brady, State's Attorney, of Peoria (Terry A. Mertel and Justin A. Nicolosi, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel    JUSTICE McDADE delivered the judgment of the court, with opinion.

Justices O'Brien and Schmidt concurred in the judgment and opinion.

## OPINION

¶ 1    The State filed a petition alleging that J.B., S.B., and R.B. were neglected minors due to an injurious environment based on allegations that Lorenzo B., the respondent, sexually assaulted B.B., his 13-year-old daughter who is not involved in the instant juvenile case, and Sierra B., another minor female. The court found that the State had proven the allegations in the petitions and adjudicated the minors neglected. The court subsequently found the respondent dispositionally unfit and made the minors wards of the court. The respondent appeals, contending that the trial court erred when it found that the minors were neglected because the police investigated the allegations of abuse months after the abuse occurred, the respondent's admissions of the abuse were not recorded, and there was no physical evidence of the abuse. We affirm.

¶ 2                                            FACTS

¶ 3    The State filed separate but identical juvenile petitions alleging that J.B., a male born September 6, 2001, S.B., a female born May 21, 2006, and R.B., a female born November 2, 2009, were neglected due to an injurious environment. In count I of the petitions, the State specifically alleged that the respondent was a "child sex offender in that" on March 9, 2011, he exposed his penis to his daughter B.B., grabbed her hand and pulled it toward his penis, and in April 2010 he placed his penis in the vagina of Sierra B., a 12- or 13-year-old girl who was in the foster care of his mother. In count II, the State alleged that the respondent reported a problem with alcohol and mental health issues.

¶ 4    The cause proceeded to an adjudicatory hearing in December 2010 and January 2011. Carla Allen testified that she was a Department of Children and Family Services investigator. She interviewed the respondent in connection with the alleged sexual assault of B.B. According to Allen, the respondent acknowledged that he had a substance abuse problem and that he consumed "a fifth of alcohol every day and [took] Ecstasy approximately every other day."

¶ 5	Peoria police officer Craig Johnson testified that he investigated an allegation of sexual assault involving the respondent and Sierra B. Johnson stated that he interviewed the respondent about this allegation on March 29, 2011. The respondent reported that on the night of the incident, he was drinking heavily and decided to spend the night at his mother's residence. At some point, he woke up to Sierra standing over him. He asked her for "some pussy" and she sat down. The respondent placed his fingers in Sierra's vagina and said that "[s]he liked it[,] so he then inserted his penis into her vagina. The respondent eventually realized that he was not acting properly, so he stopped. At the time of the incident, the respondent believed that Sierra was 15 or 16 years old; however, she was only 12 years old. His mother and other foster children were in the home at the time this incident occurred.

¶ 6	Johnson further testified that his interview with the respondent was not recorded because the respondent refused recording. The respondent did not appear intoxicated during the interview, and he spoke clearly. There was no physical evidence of the assault other than a possible test for sexually transmitted diseases. Johnson acknowledged that the incident occurred in the summer of 2010, and that he did not investigate it until March 29, 2011, due to his caseload and because Sierra requested to speak with a female detective.

¶ 7	Peoria police officer Tim Turner testified that he interviewed the respondent on March 14 and 29, 2011, pursuant to the allegation of sexual assault of B.B. that occurred on March 9, 2011. During their conversation on March 14, the respondent denied the incident with B.B. and stated that he would not participate in such conduct with his daughter.

¶ 8	According to Turner, during the March 29 interview, the respondent reported seeing "shadows" who would tell him to jump from his window and "land in a puddle or he would go to hell." The only time the shadows would leave the respondent alone was if the respondent was drunk. Turner reported that at the time of the incident involving B.B., the respondent was on a "three-day drinking binge." The respondent explained that on the night of the incident B.B. and another minor entered his room and asked for money. He "[k]icked them out of the room," and shut the door; however, B.B. picked the lock and reentered the room. At that point, the respondent "pulled his erect penis through the slot in his underwear but covered it with his left hand." The respondent was unsure if B.B. saw his penis, but he grabbed her hand and pulled it toward his penis. B.B. pulled her hand away and the respondent looked at her face and "realized what he was doing to his daughter." He then put B.B. out of his room. The respondent told Turner that B.B. did not touch his penis, and he did not intend to have sexual intercourse with her. The respondent did not realize what he was doing at that time and said that the incident only occurred because he was drunk. There were other children present in the home at the time this incident occurred.

¶ 9	Turner testified that the respondent was not intoxicated at the time of the interview and that he refused consent for Turner to record it. Turner did not have any physical evidence of the sexual assault against B.B.

¶ 10	The court found that the State had proven the allegations in count I of the petition and that J.B., S.B., and R.B. were neglected minors due to an injurious environment. At the subsequent dispositional hearing, the court made the minors wards of the court, named the children's mother as guardian, and found that the respondent was a dispositionally unfit

parent. The respondent appeals from the court's finding that the children were neglected.

¶ 11                                                    ANALYSIS

¶ 12         On appeal, the respondent contends that the trial court's determination that the State proved the allegations in the juvenile petitions was against the manifest weight of the evidence. In support of this assertion, the respondent contends that the testimony of Johnson and Turner was not credible because Johnson's investigation of the allegation occurred months after the incident and neither officer recorded the interview of the respondent. The respondent also asserts that the State did not show physical evidence of either assault. The respondent does not challenge the court's finding of dispositional unfitness. The State asserts that the court properly judged the credibility of the officers and that the State's evidence was sufficient to prove the allegations in the juvenile petition.

¶ 13         Here, the court found that J.B., R.B., and S.B. were neglected minors due to an injurious environment. See 705 ILCS 405/2-3(1)(b) (West 2010). Neglect occurs when a parent fails to exercise the care justly demanded by the circumstances and includes willful and unintentional disregard of the parent's duties. *In re K.B.*, 2012 IL App (3d) 110655. The term "neglect" does not have one fixed meaning, but it takes its content from the specific facts and circumstances of each case. *In re Arthur H.*, 212 Ill. 2d 441 (2004). "An injurious environment 'is an amorphous concept that cannot be defined with particularity but has been interpreted to include the breach of a parent's duty to ensure a safe and nurturing shelter for his or her children.' " *K.B.*, 2012 IL App (3d) 110655, ¶ 16 (quoting *In re M.W.*, 386 Ill. App. 3d 186, 197 (2008)).

¶ 14         The burden is on the State to prove an allegation of neglect by a preponderance of the evidence. *Arthur H.*, 212 Ill. 2d 441. A reviewing court will not disturb a trial court's finding of neglect unless it was against the manifest weight of the evidence. *Arthur H.*, 212 Ill. 2d 441. A determination is against the manifest weight of the evidence only when the opposite conclusion is clearly evident from the record or the determination is arbitrary, unreasonable, or not based on the evidence presented. *In re C.N.*, 196 Ill. 2d 181 (2001).

¶ 15         We conclude that the trial court's finding that the minors were neglected due to an injurious environment was not against the manifest weight of the evidence. Here, the evidence indicated that the respondent admitted that he engaged in sexual intercourse with Sierra B., and that he exposed his erect penis to B.B. and pulled her hand toward it. While the fact that an individual has been convicted of a sex offense against a minor, in itself, is insufficient to create a finding of neglect due to an injurious environment as a matter of law (see *K.B.*, 2012 IL App (3d) 110655), in this case, the respondent engaged in an act of sexual intercourse and attempted to sexually assault his daughter at a time when other minors were present in the home. This conduct is sufficient to support a finding that his actions created an injurious environment and a resultant finding of neglect. We do not believe the respondent's admission that he was intoxicated during these incidents excuses his behavior; rather, his admissions concerning the extent of his substance abuse provide additional support for the trial court's decision.

¶ 16         We acknowledge the evidence in the record that several months elapsed between the

incident involving Sierra B. and the investigation of it by the Peoria police department. However, this fact does not negate the credibility of Johnson, a determination that properly lies with the trial court. See *In re T.B.*, 215 Ill. App. 3d 1059 (1991) (the trial court is in a superior position to observe the witnesses, assess their credibility and weigh the evidence). Additionally, both Johnson and Turner testified that the respondent refused the recording of their interviews of him. While the officers did not have a recording to buttress their testimony, the absence of such tapes did not render their testimony incredible. Likewise, the absence of any physical evidence of the sexual assaults did not indicate that the assaults did not occur. The trial court was free to accept Johnson's and Turner's unrebutted testimony that the respondent confirmed that both of the alleged incidents had, in fact, occurred without any corroborating physical evidence. In fact, there would not be any physical evidence of the respondent's assault on B.B., as this incident involved an attempted touching, an occurrence that would not necessarily leave a physical injury.

¶ 17 Thus, overall, the trial court's finding of neglect is supported by the record, and therefore, it is not against the manifest weight of the evidence.

¶ 18                                                 CONCLUSION

¶ 19 For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 20 Affirmed.